<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOSEPH FOURNIER, et al.,          :
                                  :   Civil Action No. 07-1212 (DMC)
          Plaintiffs,             :
                                  :
          v.                      :   **OPINION**
                                  :
JON CORZINE, et al.,              :
                                  :
          Defendants.             :


**APPEARANCES:**

        JOSEPH FOURNIER, Plaintiff <u>pro</u> <u>se</u>
        Special Treatment Unit Annex
        CN 905
        Avenel, New Jersey 07001

        JOSEPH ARUANNO, Plaintiff <u>pro</u> <u>se</u>
        Prison #309246 SBI #330347B
        Northern Regional Unit, Special Treatment Unit
        30-35 Hackensack Avenue, P.O. Box 699
        Kearney, New Jersey 07032-0699

        RICHARD BAGAROZY, Plaintiff <u>pro</u> <u>se</u>
        Prison #360 SBI #TMP9000000
        Northern Regional Unit, Special Treatment Unit
        30-35 Hackensack Avenue, P.O. Box 699
        Kearney, New Jersey 07032-0699

        ROBERT DEAVERS, Plaintiff <u>pro</u> <u>se</u>
        Prison #000003 SBI #94302A
        Northern Regional Unit, Special Treatment Unit
        30-35 Hackensack Avenue, P.O. Box 699
        Kearney, New Jersey 07032-0699

        MICHAEL HASHER, Plaintiff <u>pro</u> <u>se</u>
        Prison #348 SBI #53128B
        Northern Regional Unit, Special Treatment Unit
        30-35 Hackensack Avenue, P.O. Box 699
        Kearney, New Jersey 07032-0699


**CAVANAUGH**, District Judge

Plaintiffs[1] are persons who were involuntarily committed to the care and custody of the State of New Jersey, Department of Human Services, pursuant to N.J.S.A. 30:4-27.1, et seq., and who are presently confined at the Northern Regional Unit, Special Treatment Unit, ("NRU/STU"), in Kearney, New Jersey.  On March 12, 2007, plaintiffs presented a Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of their constitutional rights. Plaintiffs initially submitted their Complaint without a complete application to proceed in forma pauperis ("IFP") for each named plaintiff.  Consequently, on March 20, 2007, this Court issued an Order administratively terminating the action.  The Order also gave plaintiffs thirty (30) days to each submit a complete IFP application, or pay the $350.00 filing fee, if they wished to re-open their case.

In April 2007, all plaintiffs, except Joseph Fournier, who asks to be withdrawn from this action, submitted a complete IFP application as directed.  It appearing that each plaintiff qualifies to proceed in forma pauperis, the Court will grant plaintiffs' applications to proceed as indigents, and will direct the Clerk of the Court to reopen this matter, and file the Complaint without prepayment of fees.

---

[1]  "Plaintiffs" shall refer the following plaintiffs: Joseph Aruanno, Michael Hasher, Robert Deavers, and Richard Bagarozy. Plaintiff Joseph Fournier wrote to the Court, on or about April 4, 2007, asking that his name be withdrawn from this action.

Having reviewed the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, the Court concludes that this action should proceed in part.

## I.   BACKGROUND

Plaintiffs bring this civil action seeking injunctive, declaratory, and monetary relief.  They name the following defendants: Jon Corzine, Governor of New Jersey; George W. Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Devon Brown, former NJDOC Commissioner; Kevin M. Ryan, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Alan G. Kaufman, Director, Division of Mental Health Services ("DMHS"); John E. Main, Chief Executive Officer of DMHS; William F. Plantier, Director of Operations at NJDOC; Grace Rogers, Administrator, Adult Diagnostic & Treatment Center ("ADTC") and Special Treatment Units ("STU"); Paul Lagana, Assistant Administrator of STUs; Glenn Ferguson, Clinical Program Director at STU and Annex; Merrill Main, Director of Psychology Department; John Does 1-10 and Jane Does 1-10, NJDOC employees at the STU and its Annex; John Does 11-20 and Jane Does 11-20, NJDHS and DMHS contract employee members of treatment teams; John Does 21-30 and Jane Does 21-30, unlicensed doctors employed by or

3

contracted by defendants to obtain temporary commitments; and John Does 31-40 and Jane Does 31-40, members of the interagency oversight board responsible for coordinating policies and procedures for the STU and its Annex, pursuant to <u>N.J.S.A.</u> 30:4-27.34(c). (Complaint, Caption, ¶¶ 7-21).

Plaintiffs are persons who were involuntarily and civilly committed to the care and custody of the NJDHS, pursuant to the New Jersey Sexually Violent Predators Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.1. Plaintiffs challenge the SVPA as unconstitutional on the following grounds: (1) it is egregiously over-restrictive and impermissibly punitive; (2) it allows violation of the Fifth Amendment's protection against self-incrimination; (3) "treatment is a sham" and defendants "willfully ignore and suppress any evidence" that commitment may not be warranted; (4) it violates the <u>Ex Post Facto</u> Clause; (5) it violates the due process protections of the Fourteenth Amendment; (6) it is "impermissibly vague and overbroad"; (7) the "actuarial instruments used are flawed"; (8) the "hearing court is not a neutral adjudicator"; (9) the doctors are unlicensed and "overly controlled by the agenda of the New Jersey Attorney General"; and (10) a jury trial is denied. (Compl., ¶ I.2). Plaintiffs further allege that defendants have failed to explore options other than lifetime civil commitment, and thus, have created an "oppressive, discriminatory, counter-productive and un-therapeutic

4

environment." (Id.)  Plaintiffs assert that defendants have violated their rights under the First, Fourth, Fifth, Sixth, Eighth[2] and Fourteenth Amendments.  (Compl., ¶ II.3).

In the first Count of the Complaint, plaintiffs contend that New Jersey's SVPA is overly restrictive and punitive in comparison to a program for sexually-violent predators in Texas. Plaintiffs also contend that the civil commitment program in New Jersey is counter-productive, un-therapeutic, and punitive, and goes beyond the "treatment not punishment concept" of commitment espoused in Kansas v. Hendricks, 521 U.S. 346 (1997).

To support this claim, plaintiffs allege that the New Jersey SVPA program provides no alternatives to civil commitment or halfway houses.  The SVPA also involves the Department of Corrections ("NJDOC") as part of the treatment environment, including maintenance of the Modified Activities Program ("MAP"), which serves to punish, and issuance of a "rule book" similar to handbooks given prison inmates, which prohibits SVPA residents from running a legitimate business, owning a cell phone, and owning a computer without a modem.  Plaintiffs further allege that the NJDOC defendants have been involved in the planting of contraband in plaintiffs' cells so as to create a false

---

[2]  Because Plaintiffs are civilly committed persons and not convicted prisoners, the Eighth Amendment is not applicable to them.  Therefore, all claims asserting an Eighth Amendment violation will be dismissed accordingly.

disciplinary record to prevent their release from commitment, locking up plaintiffs without valid cause, and impermissibly reading and/or destroying plaintiffs' legal and personal files. The NJDOC defendants also have refused to investigate evidence of plaintiffs' innocence in the MAP, and have encouraged other residents to intimidate and abuse plaintiffs, steal plaintiffs' files, and plant contraband as apart of a conspiracy to maintain plaintiffs' commitment. (Compl., ¶¶ 35-42).

In addition, plaintiffs contend that the STU resembles a prison and the NJDOC defendants treat plaintiffs as prisoners. For instance, the facility is surrounded by two security fences with razor wire. The STU is staffed by NJDOC correction officers who persistently abuse and harass the residents and calling them "perverts", "baby rapers", and "tree jumpers". The residents are transported for medical treatment and court appearances in handcuffs and shackles. Residents are locked in cells for long periods of time and subject to head counts. NJDOC correction officers and supervisors attend therapy sessions, which hinders any benefit of treatment and controverts the need for confidentiality. Plaintiffs are subject to random searches that often lead to the destruction or confiscation of personal property.[3] These searches have been conducted by the NJDOC's

---

[3] Plaintiffs admit that these searches usually follow a grievance or complaint filed by one of the residents.

"Special Operations Group" ("SOG"), who routinely conduct sweeping searches, arbitrary detentions, and related intimidation tactics to punish residents.  Beatings have occurred, although these plaintiffs do not allege that they have suffered any beatings at the hand of NJDOC defendants or correction officers. (Compl., ¶¶ 45-55).

Plaintiffs further contend that the resident "rule book" lists infractions that may cause a resident to lose access to their personal property, their employment, and therapy visits. The "rule book" declares that these losses of privileges do not constitute punishment, but Plaintiffs contend that the rules are applied in a punitive manner.  Incoming mail is often opened outside the presence of residents, and visitation is permitted only three days per week.  Personal physicians and psychologists are not permitted unless they have been called for an independent evaluation.  Telephone calls may be monitored and residents are denied access to cell phones.  (Compl., ¶¶ 56-62).

Plaintiffs argue that these conditions of confinement are identical or similar to the restrictive conditions imposed on convicted prisoners.  Thus, plaintiffs are being subjected to punishment in violation of their constitutional right against double jeopardy.  To the extent these conditions serve alternative, non-punitive purposes, they are excessive in relation to that alternative purpose.  Therefore, plaintiffs also

contend that the policies, practices, and conditions of confinement under the SVPA deprive plaintiffs of their right to be free from punishment in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Compl., ¶¶ 65-70).

Next, plaintiffs contend that the SVPA is overly broad and vague because virtually all sex offenders would qualify for branding as sexually violent predators. Plaintiffs point out that the New Jersey SVPA does not contain definitions for the terms "violent" and "predator", thus making the statute overly broad and vague. An individual is subject to the SVPA based on his prior record and there is no consideration given regarding any changes prior offenders may have made in their lives over a period of years or decades. Furthermore, plaintiffs contend that the statute does not require that only convictions be used for commitment, or that there be a "recent overt act" for commitment. Instead, persons may be committed for conduct based on hearsay, errors in police reports, and on allegations that resulted in a "not guilty" verdict. Consequently, the statute is overly broad and vague in violation of the Due Process Clause of the Fourteenth Amendment. (Compl., ¶¶ 71-75).

Plaintiffs further argue that the New Jersey SVPA violates the Ex Post Facto Clause. Most of the plaintiffs were originally determined not to need treatment at the ADTC, so they were sent

to prison.  Upon their release from prison, they were committed under the SVPA.  The one plaintiff, Michael Deavers, was initially confined at the ADTC and still committed under the SVPA despite 20 years of therapy.  Plaintiffs also contend that there is disparate application of the law for individuals under the same class and circumstances.[4]  For instance, because the STUs are filled to capacity, sex offenders who are now nearing the completion of their prison terms are being scheduled for release subject to Megan's Law[5] restrictions and terms of supervision, while plaintiffs remain incarcerated.  (Compl., ¶¶ 76-77).

Plaintiffs also argue that the Hearing Court is not neutral, being composed of two judges coming out of retirement to preside over SVPA commitment cases only.  Hearings are conducted within prisons, and the doctors testifying for the State are unlicensed.  There is no trial by a jury.  Moreover, once committed, residents have no due process in challenging false accusations of

---

[4]  Although not so designated by Plaintiffs, it would appear that this allegation of disparate treatment is framed as an equal protection violation.

[5]  Megan's Law is a ten-bill package of Registration and Notification Laws that requires the registration by those who commit certain designated crimes involving sexual assault and provides for the dissemination of information about those required to register.  Other states have passed their own versions of Megan's Law and Congress also passed a statute requiring a state program of registration and notification as a condition of receiving certain federal funds.  E.B. v. Verniero, 119 F.3d 1077, 1080 (3d Cir. 1997).

wrongdoing, which remains on the resident's record for purposes of continuing commitment. (Compl., ¶¶ 78-80).

Plaintiffs reiterate their allegation that the doctors relied upon by the State for commitment hearings are unlicensed and biased in favor of the State. In virtually all cases, the doctors issue contrived reports and diagnoses to support commitment so that these doctors can keep their jobs. (Compl., ¶ 81).

Plaintiffs next contend that the treatment and therapy program required for SVPA residents compels them to talk about prior offenses or conduct, which information is then used against them to maintain and extend their civil commitment. (Compl., ¶¶ 83-84).

In their final claim, Plaintiffs assert that they are subjected to illegal searches and seizures in violation of the constitutional rights. Specifically, plaintiffs state that their personal property, their person, mail and packages are searched and seized without justification. (Compl., ¶ 90).

Plaintiffs seek to have the New Jersey SVPA declared unconstitutional, and that the least restrictive means of confinement be mandated. They further seek a mandatory injunction directing defendants to begin immediate evaluations to determine the conditions of release appropriate for plaintiffs, within three months, and to release plaintiffs under terms

similar to those followed in the state of Texas.  Plaintiffs also ask that a Special Master be appointed to oversee compliance with these steps for release.  Finally, plaintiffs seek compensatory and punitive damages in the amount of $10 million.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

In those cases where a plaintiff is proceeding as an indigent pursuant to 28 U.S.C. § 1915, the Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

11

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)).

### III.  SECTION 1983 CLAIMS

Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 alleging violations of their constitutional rights under the

First, Fourth, Fifth, Sixth, and Fourteenth Amendments.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978)(municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated

13

solely on the operation of <u>respondeat</u> <u>superior</u>.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>NEW JERSEY SEXUALLY VIOLENT PREDATORS ACT ("SVPA")</u>

The New Jersey SVPA, <u>N.J.S.A.</u> 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). <u>N.J.S.A.</u> 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, <u>N.J.S.A.</u> 30:4-27.34(a); and the New Jersey Department of Human Services

("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b).
The SVPA was amended in 2003 to require that regulations be
promulgated jointly by the DOC and the DHS, in consultation with
of the Attorney General, taking "into consideration the rights of
the patients as set forth in section ten of P.L. 1965, c. 59 (C.
30:4-24.2) ... [to] specifically address the differing needs and
specific characteristics of, and treatment protocols related to,
sexually violent predators."  N.J.S.A. 30:4-27.34(d).

    In passing the SVPA, the New Jersey Legislature made
specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The
Legislature noted that it was necessary to modify the previous
civil commitment framework and additionally separate SVPs from
other persons who have been civilly committed.  Id.  The SVPA
defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage
> in acts of sexual violence if not confined in a secure
> facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

    When it appears that a person may meet the criteria of a
SVP, the "agency with jurisdiction"[6] must provide notice to the

---

    [6] An "agency with jurisdiction" refers to the agency which
releases a person who is serving a sentence or a term of
confinement.  This term includes the NJDOC.  N.J.S.A. 30:4-27.26.

New Jersey Attorney General ninety (90) days, or as soon as practicable, before the anticipated release of a person who has been convicted of a sexually violent offense.  N.J.S.A. 30:4-27.27(a)(1).  If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment.  N.J.S.A. 30:4-27.28; 30:4-27.26; see also In the Matter of Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (2000).  Once these documents are received by the court, the court must determine whether there is probable cause to believe that the person is a SVP.  N.J.S.A. 30:4-27.28(f).  If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment.  N.J.S.A. 30:4-27.28(f) and 30:4-27.29(a).  The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing.  N.J.S.A. 30:4-27.28(f).

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and

16

supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing.[7] <u>N.J.S.A.</u> 30:4-27.30(a).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued involuntary commitment to issue an order of involuntary commitment. <u>N.J.S.A.</u> 30:4-27.32(a). The SVP is not permitted to appear at the hearing without counsel, and he will be appointed counsel if indigent. <u>N.J.S.A.</u> 30:4-27.29(c). The psychiatrist on the SVP's treatment team who has conducted a personal examination of the SVP within five (5) days of the final hearing, shall testify at the hearing as to the clinical basis for involuntary commitment as a SVP. <u>N.J.S.A.</u> 30:4-27.30(b). Other members of the person's treatment team and other witnesses with relevant information, offered by the SVP or by the Attorney General, are permitted to testify at the final hearing. <u>Id</u>.

Those persons committed under the SVPA shall receive annual review hearings. <u>N.J.S.A.</u> 30:4-27.35. A SVP may be released

---

[7] A SVP is afforded the following rights at his/her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera. <u>N.J.S.A.</u> 30:4-27.31.

from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.   ANALYSIS

The Complaint challenges the constitutional validity of the New Jersey SVPA on several grounds.  Plaintiffs principally charge that the SVPA is overly restrictive and punitive "in effect" or "as applied", in violation of the Double Jeopardy and the Ex Post Facto Clauses of the U.S. Constitution.  Plaintiffs further challenge the SVPA as unconstitutionally overbroad and vague, and contend that the statute violates their Fifth Amendment right against self-incrimination, and their right to a jury trial.  The Complaint also contains numerous allegations concerning the conditions of Plaintiffs' confinement and their continuing commitment under the SVPA, asserting that such conditions are punitive and do not comport with due process and equal protection under the law, in violation of the Fourteenth Amendment.[8]

_____

[8]  Plaintiffs' allegations include, but are not limited to, the following assertions: that NJDOC officers plant contraband to create a false disciplinary record to prevent a resident's release; Plaintiffs' incoming mail is opened outside of their presence; NJDOC staff verbally harass and abuse residents; visitation is restricted to three times per week and residents are not permitted to have cell phones and their telephone calls may be monitored.  Further, Plaintiffs are subject to random and unlawful searches and seizures in violation of their Fourth Amendment rights, NJDOC staff attend their therapy sessions, the doctors who examine the residents are unlicensed and biased in favor of the State, the hearing court is not neutral, the actuarial instruments used are flawed, and treatment is a "sham".

18

For the reasons set forth below, this Court finds that the
New Jersey SVPA is facially valid and does not violate the Double
Jeopardy and Ex Post Facto Clauses of the U.S. Constitution, is
not overbroad and vague, and does not violate the Fifth Amendment
right against self-incrimination, or a constitutional right to a
jury trial.  Plaintiffs' remaining claims concerning the
conditions of their confinement, other claims alleging due
process and equal protection violations, and the Fourth Amendment
claim asserting unreasonable searches and seizures, etc., will be
allowed to proceed at this time.[9]

A.   <u>Double Jeopardy and Ex Post Facto Challenges</u>

In Count I of their Complaint, Plaintiffs argue that the
overly restrictive and punitive nature of their confinement under
the New Jersey SVPA, as applied and administered by the named
defendants, violates their constitutional rights against being
subject to double jeopardy for sex crime convictions already
served.  Plaintiffs also contend that the New Jersey SVPA

---

[9]  This Court notes that plaintiffs, Richard Bagarozy,
Robert Deavers and Michael Hasher, also are party plaintiffs in a
pending lawsuit involving claims that state officials have failed
to provide adequate treatment under the SVPA, that the conditions
of their confinement are unreasonably restrictive, that
plaintiffs have been denied access to the law library, and that
plaintiffs are subject to unreasonable searches and seizures.
<u>See</u> <u>Bagarozy v. Harris, et al.</u>, Civil No. 04-3066 (JAP).  To the
extent that any of the claims asserted here may overlap with the
claims asserted in the earlier, pending action, this Court will
consider an application for consolidation if appropriate, after
defendants have answered the Complaint.

violates the Ex Post Facto Clause of the U.S. Constitution.[10]
(See Complaint, Count III).  Both double jeopardy and ex post
facto challenges necessitate an evaluation of whether the New
Jersey SVPA constitutes "punishment".

Consequently, in support of this claim, Plaintiffs allege
that the conditions for committed SVPs are similar to the
restrictive conditions imposed to punish convicted prisoners.
For instance, Plaintiffs complain that the STU facility resembles
a prison with two security fences and razor wire around the
perimeter.  Moreover, the STU is managed by NJDOC officers as if
it were a prison with prison-like disciplinary procedures and
punishments.[11]  SVP residents are transported for medical
treatment in shackles and handcuffs.  NJDOC officers attend
therapy sessions and abuse and harass the residents.  Residents
are subject to random and routine searches, their telephone calls

---

[10]   Article I, Section 10 of the United States Constitution
provides that "no state shall ... pass any ex post facto law."

[11]   Plaintiffs also refer to the Modified Activities Program
("MAP"), which is a behavior modification program implemented by
the NJDOC and NJDHS.  MAP is designed to "prepare civilly
committed sexual predators to safely return to the community" and
focuses on "stabilizing disruptive and dangerous behaviors."
M.X.L. v. New Jersey Dept. Of Human Services/New Jersey Dept. Of
Corrections, 379 N.J. Super. 37, 45 (App. Div. 2005).  MAP
consists of four levels, proportionate to the apparent danger or
instability reflected by the resident.  Id.  A resident committed
to the most restricted level is prohibited from movement on the
tier and is restricted to his room, even during meals.  However,
the resident may have visitors, make and receive phone calls, and
is allowed to move in his separate yard.  All restrictive MAP
rooms have a toilet and sink.  Id.

are monitored, visitation restricted to three times per week, and incoming mail is often opened outside the presence of the residents.  In addition, the resident "rule book" lists infractions and corresponding losses of privileges that include the loss of access to personal property, employment and therapy visits,[12] similar to rules applied to convicted prisoners.  The rule book further prohibits residents to run a business, own a cell phone, or have a computer without a modem.  SVPs are not permitted to transfer to halfway houses.

The New Jersey SVPA states that persons committed under the statute are not to be punished but treated as "patients at a secure treatment facility, not inmates."  In re Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (App. Div. 2000).

> The treatment program is designed to provide comprehensive treatment services and is staffed by psychologists, psychiatrists, social workers, substance abuse counselors and other staff members with specialized training in the assessment and treatment of sexual deviance and personality disorders.

> According to the State, the Kearny facility is designed to provide a non-judgmental, non-punitive therapeutic treatment program in a setting that is controlled, safe, and conducive to the treatment process.  There are, however, some marked differences between the facility and other therapeutic placement facilities.  Persons committed to Kearny are housed in locked rooms and monitored by uniformed correctional officers, some carrying weapons, who are employed by the Department of Corrections.  Residents leaving the facility are shackled with handcuffs to waist chains and also with ankle cuffs.

---

[12]  The rule book declares that these losses of privileges do not constitute punishment.

Id.  See also N.J.S.A. 30:4-27.34(b) (persons committed under the Sexually Violent Predator Act are entitled to "treatment appropriately tailored to address the specific needs of sexually violent predators").

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  This guarantee is applicable to the States through the Fourteenth Amendment.  See Benton v. Maryland, 395 U.S. 784 (1969).

Three separate guarantees are "embodied in the Double Jeopardy Clause: It protects against a second prosecution for the same offense after acquittal [or mistrial], against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306-07 (1984); see also Illinois v. Vitale, 447 U.S. 410, 415 (1980).  Thus, the threshold question under a double jeopardy analysis is whether the challenged provision imposes "punishment." Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1253 (3d Cir. 1966).

The Ex Post Facto Clause prohibits the retroactive application of a law that "inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798).  Consequently, the Ex Post Facto

22

Clause cannot be violated without the imposition of punishment, similar to the Double Jeopardy Clause.

Because "punishment" is generally presumed to have the same meaning for purposes of both constitutional provisions, the threshold issue for this Court for purposes of evaluating both claims is whether the challenged measure, here, the New Jersey SVPA, constitutes punishment.  See Kansas v. Hendricks, 521 U.S. 346 (1997)(applying single "punishment" analysis for both clauses); see also E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir. 1997).

In Kansas v. Hendricks, the Supreme Court held that the double jeopardy and ex post facto clauses of the U.S. Constitution apply only to criminal statutes where punishment is imposed.  521 U.S. at 361.  The Supreme Court stated:

> We must initially ascertain whether the legislature meant the statute to establish 'civil' proceedings . . . . [W]e will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'

Id.  Thus, constitutional prohibitions against retroactive punishment can only apply to criminal legislation.  Id.; Seling v. Young, 531 U.S. 250 (2001)(holding that a state's legislative and judicial determination that its sexually violent predator statute was civil rather than criminal precluded double jeopardy

23

and ex post facto challenges by petitioners committed under said statute).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington statutes that were examined and upheld by the United States Supreme Court in Hendricks and Seling, respectively.  Like those state statutes, the New Jersey SVPA does not establish criminal proceedings.  Further, New Jersey has formally determined that the SVPA is a civil enactment, satisfying the requirements of Hendricks and Seling.  See N.J.S.A. 30:4-27.24 (New Jersey Assembly Appropriations Committee Statement stating that the SVPA "establishes a civil procedure for the involuntary commitment of sexually violent predators").

The New Jersey Supreme Court likewise determined that the New Jersey SVPA is clearly civil and non-punitive.  See In re Commitment of W.Z., 173 N.J. 109, 119-21 (2002).  In W.Z., the New Jersey Supreme Court found that the SVPA was enacted by the New Jersey State Legislature to protect the citizens of New Jersey and provide treatment for those suffering from mental abnormalities, which may cause them to commit additional acts of sexual violence [N.J.S.A. 30:4-27.25(a)] and "in recognition of the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society," [N.J.S.A. 30:4-27.25(c)].  W.Z., supra.  The New Jersey Supreme Court also noted that the SVPA requires the State to provide

24

housing, separate from the prison population, treatment, and regular review hearings under N.J.S.A. 30:4-27.34.  W.Z., supra. Further, "[t]he SVPA is virtually identical to the language of the Kansas SVPA challenged [and upheld] in Hendricks, and follows the pattern for such legislation that has been enacted by numerous other states."  W.Z., supra, 173 N.J. at 121.

Therefore, based on the Supreme Court's ruling in Kansas v. Hendricks, and the New Jersey Supreme Court's holding in W.Z., the New Jersey SVPA is a civil statute, on its face.  These findings preclude the application of a double jeopardy or ex post facto challenge.

Moreover, in Seling v. Young, the Supreme Court ruled that an "as applied" or "in effect" argument, as asserted by Plaintiffs in this case, cannot alter the conclusive legislative and judicial determination that a civil commitment statute similar to the New Jersey SVPA sets forth a civil, not criminal, commitment scheme, and precluded an "as applied" or "in effect" double jeopardy or ex post facto challenge.  Id., 531 U.S. at 263.   Thus, Plaintiffs' assertion that this Court should look beyond the face of the SVPA to the implementation of the SVPA is inconsistent with the Supreme Court's holding in Hudson v. United States, 522 U.S. 93 (1997), wherein the Court held that the determination of whether a statute is criminal or civil must be done through an examination of the statute "on its face."  522

25

U.S. at 101.  As stated above, on its face, the New Jersey SVPA
is civil.

Accordingly, Plaintiffs' double jeopardy and ex post facto
challenges to the SVPA as overly restrictive and punitive will be
dismissed for failure to state a claim, pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii).

B.   <u>Violation of Due Process Claims</u>

The Fourteenth Amendment Due Process Clause requires state
officials to provide civilly committed persons, such as these
Plaintiffs, with access to mental health treatment that gives
them a realistic opportunity to be cured or to improve the mental
condition for which they were confined.  <u>See</u> <u>Youngberg v. Romeo</u>,
457 U.S. 307, 319-22 (1982).  Accordingly, these Plaintiffs, and
other persons involuntarily committed under the SVPA, cannot
simply be warehoused and put out of sight; they must be afforded
adequate treatment.  Although confined, they are not prisoners.
They are entitled by law to "more considerate treatment and
conditions of confinement than criminals whose conditions of
confinement are designed to punish."  <u>Youngberg</u>, 457 U.S. at 322.

As to the nature of treatment, the State "enjoy[s] a wide
latitude in developing treatment regimens [for sex offenders],"
<u>Kansas v. Hendricks</u>, 521 U.S. at 368 n.4, and "liability [on a
claim of constitutional deprivation] may be imposed only where
the decision by the professional is such a substantial departure

26

from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323. As stated above, the Hendricks Court rejected a facial challenge to a Kansas statute substantially similar to the New Jersey SVPA at issue here, noting that by committing sex offenders "to an institution expressly designed to provide psychiatric care and treatment" the state "has doubtless satisfied its obligation to provide available treatment." Hendricks, 521 U.S. at 368 n. 4.

However, "[d]ue process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992) (citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson v. Indiana, 406 U.S. 715, 738 (1972)). In addition, "due process requires that the conditions and duration of confinement under [a sexual predator commitment act] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265 (citing Foucha v. Louisiana, 504 U.S. at 79; Youngberg, 457 U.S. at 324); and Jackson v. Indiana, 406 U.S. 715, 738 (1972)).

Thus, involuntarily committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, and minimally adequate or

reasonable training to ensure safety and freedom from undue restraint, id. at 317-19. These interests, however, are not absolute. Id. at 319-20. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)). In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id. In Youngberg, balancing the interests of the State against the rights of involuntarily committed mentally retarded persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)). Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from
> accepted professional judgment, practice, or standards
> as to demonstrate that the person responsible actually

did not base the decision on such a judgment.  In an
action for damages against a professional in his
individual capacity, however, the professional will not
be liable if he was unable to satisfy his normal
professional standards because of budgetary
constraints; in such a situation, good-faith immunity
would bar liability.

457 U.S. at 323 (footnote omitted).  This standard is applicable

to the decision to forcibly administer psychotropic drugs against

the will of an involuntarily committed mental patient.  See

Rennie v. Klein, 720 F.2d 266 (3d Cir. 1983).  Nevertheless, the

Court of Appeals for the Third Circuit has held that, even after

Youngberg, nonprofessional employees who provide care for

involuntarily institutionalized mentally retarded persons are

subject only to a "deliberate indifference" standard.  Shaw v.

Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).

Taking account of the provisions of the New Jersey SVPA, as

interpreted by the New Jersey Superior Court, Appellate Division,

that persons committed under the act are patients, not inmates,

the Youngberg Fourteenth Amendment "professional judgment"

standard applies to treatment decisions that allegedly violate

such persons' constitutional rights.  Accordingly, this Court

construes Plaintiffs' due process claims as alleging that

Defendants' punitive actions and overly restrictive conduct

violates the Youngberg standard, and will permit those claims to

proceed.

C.   <u>The SVPA Is Not Overly Broad and Vague</u>

Plaintiffs next argue that the SVPA is overbroad and vague because it does not define the terms "violent" and "predator", and because a person may be found to be a SVP based on hearsay from a police report or on allegations of a sex crime for which the person has been acquitted.  (<u>See</u> Complaint, Count II).

Contrary to Plaintiffs' claim, the term "sexually violent predator" has been defined under the SVPA.  The Act defines a SVP as "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment."  <u>N.J.S.A.</u> 30:4-27.26.

Furthermore, each term relevant to a finding that a person is a SVP is defined under the SVPA.  In particular, "sexually violent offense" is defined as:

> (a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to subparagraph (b) of paragraph (2) of subsection c. of <u>N.J.S.</u> 2C:13-1; criminal sexual contact; felony murder pursuant to paragraph (3) of <u>N.J.S.</u> 2C:11-3 if the underlying crime is a sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or

(b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.

N.J.S.A. 30:4-27.26(a), (b).

The term "mental abnormality" also is defined as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26. The phrase "likely to engage in acts of sexual violence" is defined further to mean that "the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." Id.

Moreover, the New Jersey Supreme Court has held that the SVPA is not impermissibly overbroad. In W.Z., the state court found that the inclusion of both emotional and cognitive impairments in the definition of "mental abnormality" does not make the SVPA overbroad but rather, clarifies ways in which a mental abnormality may manifest itself; the SVPA appropriately limits its application or reach to convicted sex offenders who lack adequate control over their behavior and suffer from a mental abnormality or personality disorder which make them likely to reoffend in the future. W.Z., 173 N.J. at 121-130.

Therefore, based on the clear meaning ascribed to the terms "sexually violent predator," "sexually violent offense" and "mental abnormality," and because the language of New Jersey's

31

SVPA is "virtually identical" to the language of the Kansas SVPA challenged and upheld in <u>Hendricks</u>, <u>see</u> <u>W.Z.</u>, <u>supra</u>, 173 N.J. at 121, this Court finds Plaintiffs' contention that the SVPA is unconstitutionally overbroad and vague fails to state a cognizable claim, and this claim will be dismissed accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The second part to this claim of vagueness asserts that persons may be adjudicated a SVP based on hearsay in police reports and allegations that resulted in a "not guilty" verdict. However, to be adjudicated a SVP under the SVPA, the State must prove that the sex offender has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he will not control his sexually violent behavior and will reoffend. <u>In re Civil Commitment of A.H.B.</u>, 386 N.J. Super. 16, (App. Div. 2006), <u>certif</u>. <u>denied</u>, 188 N.J. 492 (2007).  Thus, the person must have been convicted of a predicate offense (<u>N.J.S.A.</u> 30:4-27.26(a)) in the past, and the State must show by clear and convincing evidence that the person currently meets the definition of a SVP and currently presents a high likelihood of committing sexually violent acts if released.  <u>In re Commitment of P.Z.H.</u>, 377 N.J. Super. 458, (App. Div. 2005).  <u>See</u> <u>also</u> <u>N.J.S.A.</u> 30:4-27.28(a)(the Attorney General shall submit a

32

clinical certificate[13] completed by a psychiatrist at the facility where the person is a patient and the screening certificate which authorized admission of the person to the facility).

The agency with jurisdiction, that is, the agency which is set to release a person serving a sentence or term of confinement, "shall provide the Attorney General with all information relevant to a determination of whether the person may be a sexually violent predator, including, without regard to classification as confidential ..., any preparole report, psychological and medical records, any statement of the reasons for denial of parole and a statement from the agency with jurisdiction of the reasons for its determination." N.J.S.A. 30:4-27.27(b).  Further, disclosure of confidential information, documents and records "shall be limited to a professional evaluating the person's condition pursuant to this section, the Attorney General and a member of the Attorney General's staff as necessary ... ." N.J.S.A. 30:4-27.27(c).

---

[13]   A "clinical certificate for a sexually violent predator" is defined as a form prepared by the Division of Mental Health Services in the DHS and completed by a psychiatrist or other physician who has examined the person subject to commitment within three days of presenting the person for admission to a facility for treatment, and which states that the person is a SVP in need of involuntary commitment.  The form also shall state the specific facts upon which the examining physician has based that conclusion.  N.J.S.A. 30:4-27.26.

In <u>In re Civil Commitment of A.E.F.</u>, 377 N.J. Super. 473 (App. Div. 2005), <u>certif</u>. <u>denied</u>, 185 N.J. 393 (2005), the Superior Court of New Jersey, Appellate Division held that judges at civil commitment proceedings under the SVPA should carefully scrutinize prior evaluations of sex offenders performed by non-testifying experts and factual information concerning offenses contained in presentence investigation reports ("PSIs") or in medical evaluations so that their use is not abused. Thus, the fact that a testifying expert may claim that factual information contained in PSIs or medical evaluations (which the SVP may deny as true) is of the type of information "reasonably relied upon" by experts in their field, should not automatically shield such hearsay from scrutiny under <u>N.J.R.E.</u> 703. <u>A.E.F.</u>, 377 N.J. Super. at 490-493. <u>See</u> <u>also</u> <u>N.J.S.A.</u> 4:27.27(b), (c).

Consequently, this Court finds that the SVPA does not provide that hearsay evidence may be considered by the judge in its substantive capacity, as generally asserted by Plaintiffs. In this regard, Plaintiff's claim that the statute is overbroad and vague will be dismissed for failure to state a claim.[14]

---

[14] Plaintiffs do not assert that their commitments were actually based on hearsay evidence. Rather, they are challenging the SVPA in general as unconstitutional. To the extent that they wish to challenge their commitment on the ground that the state court considered hearsay as substantive evidence, the appropriate vehicle for such a claim would be individual § 2254 habeas petitions after Plaintiffs exhausted their state court remedies.

D.   Right to a Jury Trial

In Count III, Plaintiffs argue that they are denied due process under the SVPA because they have been denied their right to a jury trial.  (See Complaint, ¶ 79).  It is clear that under New Jersey law, there is no right to a jury trial in SVPA hearings.  See In re Commitment of J.H.M., 367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004)(finding that persons subject to commitment under the SVPA are not entitled to more constitutional protections than afforded by the statute, and noting that the SVPA statute does not provide for jury trials), disapproved of on other grounds in, In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App. Div.), certif. denied, 185 N.J. 393 (2005).

The United States Supreme Court has not decided the issue of whether due process requires a jury trial in civil commitment proceedings.[15]  Nor has the Supreme Court determined or

---

[15]   But see United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990)(due process does not provide right to jury trial in civil commitment proceedings), cert. denied, 499 U.S. 963 (1991).  Moreover, it is instructive that, in the context of federal habeas actions under 28 U.S.C. § 2254, courts have found no right to a jury trial in civil commitment proceedings.  In Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  335 F.3d at 710-711.

incorporated the Seventh Amendment right to a jury for such cases.[16]

In Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  See id. at 711 (citing Addington v. Texas, 441 U.S. 418, 431 (1979)).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in Addington, it certainly left it open to states to employ their own preferred procedures.  It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face."  Id. at 709.

Therefore, where there is no clearly established Supreme Court law holding that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury trial in such cases, see Poole, 335 F.3d at 710-11, this Court concludes that there is no federal constitutional right to a jury trial in state SVP civil commitment proceedings,

---

[16]  The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court in the United States, than according to the rules of the common law."  The Seventh Amendment right to a jury trial does not apply to state court proceedings.  See City of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719 (1999).

and Plaintiffs' claim for relief on this ground will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

E.   <u>The Privilege Against Self-Incrimination</u>

In Count V of their Complaint, Plaintiffs allege that they are compelled to talk about their prior offenses and conduct in required therapy sessions, which violates their Fifth Amendment right against compelled self-incrimination.  The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  The Self-Incrimination Clause applies to the States through the Fourteenth Amendment.  <u>Malloy v. Hogan</u>, 378 U.S. 1, 6 (1964).  The Clause speaks of "compulsion," <u>United States v. Monia</u>, 317 U.S. 424, 427 (1943), and the U.S. Supreme Court has emphasized that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." <u>United States v. Washington</u>, 431 U.S. 181, 188 (1977).

In <u>McKune v. Lile</u>, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual history form which details all prior sexual activities,

regardless of whether such activities constitute uncharged criminal offenses.  In upholding the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole.  See 537 U.S. at 38 (Kennedy, J., plurality opinion); 537 U.S. at 52-53 (O'Connor, J., concurring).

Relying upon McKune, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[17] to the extent it permitted good time credits to be withheld or revoked based upon a prisoner's refusal to disclose information about past events for which he could face subsequent prosecution. Bender v. New Jersey Dept. of Corrections, 356 N.J. Super. 432 (App. Div. 2003).  One year later, the Appellate Division expanded upon Bender, holding that a prisoner retains his privilege against self-incrimination until he has exhausted the direct appeal process from his criminal conviction, that a prisoner is not required to discuss the crimes for which he was convicted until his petition for certification is denied by the

_____

[17] N.J.S.A. 2C:47-8 provides, in pertinent part:

> a term of imprisonment imposed on a person confined to the Adult Diagnostic and Treatment Center ... shall not be reduced by progressive time credits or credits for diligent application to work and other institutional assignments for any year or fractional part of a year if the person failed to fully cooperate with all treatment offered to him during that time period.

Supreme Court of New Jersey, and that good time credits may not be withheld or revoked based upon the refusal to disclose information about the crime of conviction until the direct appeals are exhausted. <u>Lewis v. Dept. of Corrections</u>, 365 N.J. Super. 503 (App. Div. 2004).

In <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003), the Supreme Court indicated that violations of the prophylactic rules safeguarding the right against compelled self-incrimination do not amount to actual constitutional violations as required for civil liability under § 1983. <u>See</u> <u>also</u> <u>Renda v. King</u>, 347 F.3d 550, 559 (3d Cir. 2003)(stating that "it is the use of coerced statements during a criminal trial ... that violates the Constitution")(citations omitted).

The Court of Appeals for the Third Circuit has held in a non-precedential opinion that there is no Fifth Amendment violation in forcing a prisoner to choose between maintaining his innocence (with respect to the crime of which he was convicted) and participating in a treatment program necessary for parole recommendation. <u>See</u> <u>Thorpe v. Grillo</u>, 80 Fed.Appx. 215, 2003 WL 22477890 (3d Cir. 2003) (unpubl.), <u>cert. denied</u>, 542 U.S. 924 (2004).[18]

---

[18] The Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction or, in connection with a rehabilitation program, uncharged sexual

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction.  See Minnesota v. Murphy, 465 U.S. 420, 426 (1984).  However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities."  Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478 (1972).  "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."

---

conduct which may be criminal.  See, e.g., Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not violate Self-Incrimination Clause, even though non-participation results in denial of parole); Vinson v. Michigan Parole Board, 2006 WL 305653 (E.D. Mich. 2006) (parole board's consideration of prisoner's refusal to accept responsibility for his crime does not violate Self-Incrimination Clause); Sullivan v. Pennsylvania Bd. of Probation and Parole, 2006 WL 1050526 (W.D. Pa. 2006) (where there is no liberty interest in parole, no Fifth Amendment violation from adverse parole decision based upon refusal to admit to crime of conviction or other potentially criminal behavior); but see Donhauser v. Goord, 314 F. Supp.2d 119, 127 (N.D.N.Y. 2004) ("requiring plaintiff as part of the [sexual offender counseling program] to divulge a history of sexual conduct, including illegal acts for which no criminal charges have been brought, or else face a loss of good time credits, violates his Fifth Amendment privilege against self-incrimination"); Boddie v. New York State Division of Parole, 288 F. Supp.2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer questions regarding the crime of conviction).

Marchetti v. United States, 390 U.S. 39, 53 (1968) (citations omitted).  Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster." In re Corrugated Container Antitrust Litigation, 662 F.2d 875, 883 (D.C. Cir.1981) (citing In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir.1979)).

Here, Plaintiffs are civilly committed persons and not inmates anticipating parole.  However, the Court finds this distinction to be immaterial in Plaintiffs' Fifth Amendment claim because there does not appear to be any "real" possibility that Plaintiffs could be subject to future prosecution for admitting their responsibility for the crimes of which they were convicted and have already served time in prison.  See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J.Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

Accordingly, the possibility that Plaintiffs' admissions during their therapy and treatment programs could lead to further prosecution is "remote and speculative."  Plaintiffs no longer have a Fifth Amendment privilege against answering questions about the crime of conviction for which they have already completed their term of imprisonment.[19]  Cf. Rice v. Michigan Parole Board, 2005 WL 2297463 (W.D. Mich. Sept. 21, 2005) (where no appeals or post-conviction relief proceedings remain pending, possibility of any admission to crime of conviction incriminating prisoner in the future "is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination"). Consequently, the Court finds that Plaintiffs fail to state a claim for violation of the Self-Incrimination Clause and this claim will be dismissed accordingly.[20]

─────────────────

[19]  Plaintiffs do not allege that they have direct appeals or post-conviction relief proceedings still pending with respect to their criminal convictions.

[20] Should Plaintiffs be able to establish that any admission to the crimes of conviction otherwise would subject them to a real possibility of prosecution, they may make an application to amend the Complaint accordingly.  Cf., e.g., Thomas v. Independence Township, 2006 WL 2621094 (3d Cir. 2006) ("Even when a defendant does not formally move for a more definite statement, the district court has the discretion to demand more specific factual allegations in order to protect the substance of the qualified immunity defense and avoid subjecting government officials who may be immune from suit to needless discovery and the other burdens of litigation.").  Plaintiffs should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized

VI.   CONCLUSION

For the reasons stated above, the Court will dismiss those claims challenging the validity of the New Jersey SVPA, in particular, Plaintiffs' double jeopardy and ex post facto challenges, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  In addition, Plaintiffs' claims that the SVPA is unconstitutional as overbroad and vague, that Plaintiffs have a right to a jury trial under the SVPA, and that their Fifth Amendment right against self-incrimination is infringed by the SVPA, likewise will be dismissed for failure to state a claim. Plaintiffs' remaining claims will be permitted to proceed.  An appropriate order follows.


　S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH
United States District Judge

Dated: July 26, 2007

_____

to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.